Filed 7/10/26  P. v. McClellan CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B340939 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA296249) |
| v. | |
| KENNETH MCCLELLAN, | |
| Defendant and Appellant. | |

APPEAL from a postconviction order of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Reversed in part and remanded with directions.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Kenneth McClellan appeals from an order following a resentencing hearing pursuant to Penal Code section 1172.75.[1] He contends the resentencing court erred in declining to strike his prior strike convictions. We discern no abuse of the court's discretion.

McClellan further contends the resentencing court erred by (1) imposing consecutive sentences on his attempted murder and felon in possession of a firearm counts because the court was unaware of its discretion to impose concurrent terms, (2) not recalculating custody credits, and (3) reimposing a restitution fine under section 1202.4. The People concede the court erred, and we agree. We therefore reverse and remand with directions for the court to consider whether to impose concurrent or consecutive terms, recalculate McClellan's custody credits, and vacate the section 1202.4 fine.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Conviction[2]**

1.    *The Prosecution Case*

In January 2006, at approximately 7:30 p.m., Byron Johnson was outside his home on West 67th Street moving a vehicle so that he could place his trash cans by the curb. Johnson was shot three times and taken to a hospital. Two of his brothers, both of whom lived with him, were members of the Rollin 60's Crips gang, but Johnson denied being a member.

---

[1]    All further statutory references are to the Penal Code.

[2]    The background facts are taken from McClellan's direct appeal. (*People v. McClellan* (May 20, 2010, B211673) [nonpub. opn.].)

2

Their home, in Rollin 60's territory, was a known hangout for the gang.

Between 7:30 and 7:45 p.m., Shawna C. was in her car, stopped at a red light at an intersection near Johnson's home, when she heard gunshots. She saw a person in the driver's seat of a white Sebring shooting at a man standing near a parked car in front of a house. The Sebring made a right turn in front of Shawna's car, and when the light turned green, she began to follow it. She was able to stop alongside the passenger side of the Sebring at a red light. She looked through its open window and saw one male inside, whom she later identified as McClellan.

Shawna continued following McClellan and was able to get a partial license plate number. McClellan entered the Inglewood Cemetery where Shawna noticed a large gathering of people. She did not turn into the cemetery. She returned to the house where the shooting took place.

At the scene of the shooting, Shawna spoke to Officer Paul Fedynich. She told him what she saw and gave him the partial license plate number and descriptions of the Sebring and McClellan. Officers took Shawna in their patrol car to the Inglewood Cemetery.

When they arrived, Officer Fedynich observed approximately 100 individuals leaving what appeared to be a funeral, including some Centinela Park Family Bloods members. Shawna told Officer Fedynich she saw the Sebring in a parking lot. She also saw McClellan get into a black SUV. The SUV left the cemetery, followed by the Sebring. Officers followed and stopped the vehicles. Officer Fedynich approached a woman who was driving the Sebring. She said the vehicle belonged to a guy behind her who asked her at the cemetery to drive it. Officer

3

Fedynich assumed she was speaking about someone in the SUV, which was behind the Sebring.

Shawna saw three males get out of the SUV. She saw McClellan in the group and identified him as the shooter. McClellan was arrested and taken to the police station. He said he was a member of the Centinela Park Family Bloods with the moniker of "'Crip Killer.'"

Officer Jeffrey Vach inspected the Sebring several days after the shooting. Inside the center console, he found an interim driver's license in McClellan's name. In the vehicle, Officer Vach found two .380 caliber casings. Three .380 caliber casings were found at the scene of the shooting. The parties stipulated the same firearm fired the five casings.

2. *The Defense Case*

McClellan said that at the time of the shooting, he was at a wake for his friend at the Inglewood Cemetery. He drove to the cemetery in a dark blue SUV, arriving at 6:45 p.m. He left the wake at about 8:30 p.m. McClellan stated he was no longer a member of the Centinela Park gang and denied telling officers he was. He said he was an associate.

McClellan said he was last in the Sebring three weeks before the shooting. He had been in the car on two other occasions but had no idea how his license came to be inside. He claimed the officer did not find the license in the car's console. He denied asking the woman who was driving the Sebring when it was stopped by police to drive the car. McClellan said he did not see the Sebring that night. He denied shooting Johnson.

The parties stipulated that a retired Los Angeles police officer, who was an expert in police procedures, would have

4

testified that proper investigative procedure was not followed because officers did not conduct a gunshot residue test on the interior of the Sebring.

### 3. *McClellan's Original Sentence*

Following a bench trial, McClellan was convicted of attempted murder (count 1), with the finding that he personally used and discharged a firearm and caused great bodily injury to the victim, and being a felon in possession of a firearm (count 2). (§§ 664/187, subd. (a), 12022.53, subds. (b)–(d), 12022.7, subd. (a), 12022.5, subd. (a), 12021, subd. (a).) The trial court found true that McClellan committed the crimes with the intent to benefit a criminal street gang, suffered two prior serious felony convictions, and served two prior prison terms. (§§ 186.22, subd. (b)(1)(A), 1170.12, subds. (a)–(d), 667, subds. (b)–(i), 667, subd. (a), 667.5, subd. (b).)

In October 2008, the trial court sentenced McClellan to a total term of 87 years to life imprisonment, which included application of the "Three Strikes" law. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) The court ordered McClellan to pay a restitution fine of $10,000 under section 1202.4. A different panel of this court remanded the case for resentencing on count 1 but affirmed the judgment in all other respects. In March 2011, the trial court imposed the same sentence it had previously selected for count 1.

## B. Section 1172.75 Resentencing

In February 2023, the California Department of Corrections and Rehabilitation (CDCR) identified McClellan as

5

eligible for resentencing under section 1172.75.[3]  McClellan filed a motion for resentencing, and the People opposed the request.

   At the resentencing hearing, the court denied McClellan's request to strike his prior strike convictions and run his sentences on counts 1 and 2 concurrently.  The court stated, "I think Mr. McClellan is entitled to some relief. [¶] The problem I have . . . is that I can't write down two concurrent because of his strikes.  I'm not inclined to strike his strikes."  The court resentenced McClellan to a total term of 25 years to life plus 27 years:  nine years tripled to 27 years under the Three Strikes law for count 1, and 25 years to life for count 2.  The terms were to be served consecutively.  Additionally, the court ordered that "[a]ll fines and fees previously imposed remain in effect" and that CDCR calculate custody credits.  McClellan appealed.

---

[3]	Section 1172.75, subdivision (a) provides, "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid."  The statute entitles a defendant to a full resentencing if the defendant's underlying judgment includes a now invalid prior prison term enhancement.  (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1054; *People v. Monroe* (2022) 85 Cal.App.5th 393, 402.)  To facilitate the process, the statute directs CDCR to "identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)."  (§ 1172.75, subd. (b).)

# DISCUSSION

## A. The Resentencing Court Did Not Abuse Its Discretion in Declining to Strike McClellan's Prior Strike Convictions

McClellan argues the trial court abused its discretion in declining to strike his prior strike convictions. We are not persuaded.

Under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), "a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . 'in furtherance of justice' pursuant to [ ] section 1385(a)." (*People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*).) A sentencing court "must consider whether, in light of the nature and circumstances of [defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.) The Three Strikes law "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper" (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*)), and "'carefully circumscribes the trial court's power to depart from this norm.'" (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170 (*Bernal*).)

We review a sentencing court's denial of a *Romero* motion for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 374.) A court abuses its discretion only if the defendant so clearly falls outside the spirit of the Three Strikes law that no reasonable

person could disagree. (*Id.* at p. 378.) Only extraordinary circumstances warrant a finding that a defendant falls outside the spirit of the law. (*Ibid.*) Accordingly, "the circumstances where no reasonable people could disagree that the [defendant] falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

Given McClellan's violent criminal history, we discern no abuse of discretion in the order declining to strike his prior strike convictions. McClellan received his first strike in 1996 when he pleaded no contest to attempted aggravated mayhem.[4] Probation records state he punched and repeatedly stabbed the victim, who was in a wheelchair, after asking if the victim was a Rollin 60's member. McClellan was sentenced to seven years imprisonment. McClellan's second strike occurred in 2002 when he was convicted of robbery, for which he was sentenced to four years imprisonment.[5] McClellan was paroled in July 2005, and six months later, committed the underlying offenses involving driving to the victim's home in rival gang territory and shooting the victim multiple times. McClellan did not reform his ways after suffering the prior strikes. (*Williams*, *supra*, 17 Cal.4th at p. 163; see also *People v. Sullivan* (2007) 151 Cal.App.4th 524, 571 ["'three strikes law punishes not only [the defendant's] current offenses, but also his recidivism'"].)

---

[4]     At the resentencing hearing, defense counsel noted that McClellan was 14 years old at the time of the incident but was tried as an adult.

[5]     According to the People's opposition to McClellan's motion for resentencing, McClellan and another suspect held restaurant employees up at gunpoint, tied them up, and took $1,700 in cash before fleeing.

8

McClellan contends that mitigating factors, including his troubled childhood, youth at the time of the prior strikes and underlying offenses, and rehabilitation while incarcerated placed him outside the spirit of the Three Strikes law. The presence of mitigating factors does not render the resentencing court's decision an abuse of discretion. (*Bernal*, *supra*, 42 Cal.App.5th at p. 1170; cf. *Williams*, *supra*, 17 Cal.4th at p. 163 [trial court abused discretion in granting *Romero* motion, despite defendant's youth at time of prior strikes, because defendant persisted in criminal activity].) "[J]udicially mandating the predominance" of these factors would "eviscerate[ ] the trial court's discretion" under *Romero*. (*Carmony*, *supra*, 33 Cal.4th at p. 379.) Furthermore, the People noted, and McClellan did not dispute, that McClellan had six prison disciplinary issues between 2016 and 2022, three of which were for battery on a prisoner. The resentencing court could reasonably conclude McClellan's prison conduct did not support the extraordinary remedy of striking his prior strikes.

In short, McClellan does not show the resentencing court abused its discretion by finding he was within the spirit of the Three Strikes law.

B.    **The Resentencing Court Erroneously Believed Consecutive Sentences were Mandatory**

McClellan asserts that we must remand for a new sentencing hearing because the trial court erroneously believed it lacked discretion to impose concurrent sentences on counts 1 and 2. The People concede that remand is required, and we accept the concession.

9

When the Three Strikes law applies, sentences for current qualifying offenses must be ordered to run consecutively to each other if the current offenses occur on separate occasions and do not arise from the same set of operative facts. (*People v. Henderson* (2022) 14 Cal.5th 34, 45, citing § 667, subd. (c)(6).) "Conversely, where a sentencing court determines that two or more current felony convictions were either 'committed on the same occasion' or 'aris[e] from the same set of operative facts' . . . , consecutive sentencing is not required under the three strikes law, but is permissible in the trial court's sound discretion." (*People v. Lawrence* (2000) 24 Cal.4th 219, 233.)

When the record shows the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) "Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion." (*Ibid.*)

The attempted murder and felon in possession of a firearm counts were based on McClellan's possession and use of the same firearm. There is no suggestion that McClellan possessed more than one gun when he committed the offenses. (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1567.) Because the attempted murder and felon in possession of a firearm counts arose from the same set of operative facts, the resentencing court had discretion to impose concurrent sentences. Remand for resentencing is appropriate as the court was unaware of its discretion, and there is no indication that had it been aware of its discretion, it would

10

nevertheless have imposed consecutive terms.  (*People v. Deloza* (1998) 18 Cal.4th 585, 600; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  We express no opinion on how the court should exercise its discretion on remand.

### C.    The Resentencing Court Must Recalculate McClellan's Custody Credits

We agree with the parties that the resentencing court improperly delegated recalculation of McClellan's custody credits to CDCR.  When a felony sentence is modified during the term of imprisonment, the trial court must "recalculate and credit the *actual time* defendant had served on his sentence prior to the modification."  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23.)  "'[W]here a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts.'"  (*Id.* at p. 32, italics omitted, quoting § 2900.1.)  On remand, the resentencing court must recalculate McClellan's custody credits for actual time served.

### D.    The Restitution Fine Must Be Vacated

McClellan argues, and the People concede, the restitution fine imposed under section 1202.4 must be vacated under section 1465.9.  We agree.

Effective January 1, 2025, section 1465.9 was amended to add subdivision (d), which provides:  "Upon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall

11

be unenforceable and uncollectible and any portion of a judgment imposing those fines shall be vacated." Because McClellan's restitution fine was imposed more than 10 years ago, any balance is unenforceable and uncollectable by operation of law. The fine must be vacated.

## DISPOSITION

The order denying McClellan's request to strike his prior strike convictions is affirmed. However, the matter is reversed and remanded to the resentencing court to (1) exercise its discretion on whether the terms for counts 1 and 2 should be concurrent or consecutive, (2) recalculate McClellan's custody credits, and (3) vacate the restitution fine imposed under section 1202.4. The court shall prepare an amended abstract of judgment reflecting the updated custody credits and that the restitution fine has been vacated. The resentencing court shall then forward a certified copy to CDCR.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.

We concur:


ZUKIN, P. J.


TAMZARIAN, J.

12